NICHOL v BILLOT

Docket No. 60848. Argued December 6, 1978 (Calendar No. 11).—
Decided June 18, 1979.

Milo Nichol was hired by the owner of the Sunset Trailer Park in
Sandusky, Michigan, Thomas Boyle, to help with an excavation
job at the park which was being supervised by the prior owner,
O. J. Campbell. Wayne Billot, a contractor who did business as
Billot Excavating Company, was hired to dig a trench from an
existing septic system to an expanded sewer line. Nichol clim-

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur 2d, Master and Servant §§ 2, 373, 455.
   81 Am Jur 2d, Workmen's Compensation §§ 152-154, 156-159, 162,
   163, 167-174.
[2] 53 Am Jur 2d, Master and Servant §§ 2, 413.
   81 Am Jur 2d, Workmen's Compensation §§ 156-159, 162, 163, 167-
   169.
   Status of gasoline and oil distributor or dealer as agent, employee,
   independent contractor, or independent dealer as regards respon-
   sibility for injury to person or damage to property. 83 ALR2d
   1282.
[3] 52 Am Jur 2d, Master and Servant §§ 417, 418.
   81 Am Jur 2d, Workmen's Compensation §§ 167-172.
[4] 53 Am Jur 2d, Master and Servant §§ 417, 418, 452 et seq.
   81 Am Jur 2d, Workmen's Compensation § 60.
   82 Am Jur 2d, Workmen's Compensation § 399.
[5] 53 Am Jur 2d, Master and Servant §§ 398-400, 405, 422.
   81 Am Jur 2d, Workmen's Compensation § 60.
   82 Am Jur 2d, Workmen's Compensation § 399.
[6] 53 Am Jur 2d, Master and Servant §§ 2, 122 et seq.
   81 Am Jur 2d, Workmen's Compensation §§ 22, 31.
[7] 53 Am Jur 2d, Master and Servant §§ 302-312.
   81 Am Jur 2d, Workmen's Compensation §§ 48, 54, 67.
[8] 53 Am Jur 2d, Master and Servant §§ 394, 395, 460.
   82 Am Jur 2d, Workmen's Compensation §§ 547, 635.
[9] 53 Am Jur 2d, Master and Servant §§ 394, 395, 460.
   82 Am Jur 2d, Workmen's Compensation §§ 547, 635.
[10] 53 Am Jur 2d, Master and Servant §§ 4, 398, 413, 455, 460.
   81 Am Jur 2d, Workmen's Compensation §§ 168-170.
[11] 53 Am Jur 2d, Master and Servant §§ 2-4, 331, 398, 455.
   81 Am Jur 2d, Workmen's Compensation §§ 48, 54.

bed into the trench after the excavation was completed, and shortly after that the wall of the trench, which was not shored or braced in any way, collapsed, and Nichol was killed. Milo Nichol's widow, Bertha Nichol, received workmen's compensation benefits from his employer, Thomas Boyle. Mrs. Nichol then brought an action against the excavator, Wayne Billot, as a third-party tortfeasor. The plaintiff argued that defendant Billot was an independent contractor whose negligence in excavating the ditch had caused her husband's death. The defendant argued that he was a co-employee of the decedent and thus exempt from liability as a third-party tortfeasor under the Worker's Disability Compensation Act, and also that the plaintiff's decedent was contributorily negligent. A jury in Sanilac Circuit Court, Allen E. Keyes, J., returned a verdict for the defendant of no cause of action. The Court of Appeals, Beasley, P.J., and McDonald, J. (V. J. Brennan, J., dissenting), affirmed (Docket No. 29607). Plaintiff appeals. *Held:*

1. The theory of control is the traditional common-law test of the master-servant relationship. Its purpose is to define and limit the scope of the master's liability under the doctrine of *respondeat superior.* The "economic reality" test has been adopted as the proper guide to defining an employment relation under the Worker's Disability Compensation Act. It is a matter of the realities of the work performed. Control is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one. In determining the economic realities a court must determine whether the work being performed is an integral part of the regular business of the employer, a contribution to the accomplishment of a common objective.

2. The ultimate purpose of the economic reality test is to effectuate the goals of workers' compensation by determining whether the relationship is of the type intended to be protected by the act. The circumstances in this case do not fit neatly into the purposes either of the control test or of the economic reality test. There is no liability on a theory of *respondeat superior* involved, nor is there an application for workmen's compensation benefits; instead, the defendant seeks to use the Worker's Disability Compensation Act as a shield.

3. The defendant admits that for most purposes he was an independent contractor, but he argues that in this case, because O. J. Campbell exercised supervisory control for the trailer park over him, he became an employee of the trailer park. The control test was never intended to define the status of an

independent contractor, and it is a misuse to use it as a definition of employee status for purposes other than the one for which it was originally intended, *i.e.*, the question of the vicarious liability of the master under the doctrine of *respondeat superior*. Therefore, application of the control test is inappropriate in this case.

4. Although the payment of workmen's compensation benefits is not at issue here, significant objectives of the Worker's Disability Compensation Act are involved because the act limits the worker's right to sue his fellow employees but permits actions against third-party tortfeasors. An independent contractor is a third party subject to suit under the act. He is often in as good a position as, if not better than, the employer to know the hazards of the trade and the concomitant safety precautions. Allowing an independent contractor to abandon accepted safety measures and then to disclaim liability for his omission because his employer exercised some degree of control would not only deprive a workmen's compensation beneficiary of his third-party action against the contractor, it would also seriously endanger the safety of workers. Therefore, factors other than control should be considered in limiting the plaintiff's common-law right to sue.

5. The economic reality test provides the other factors which ought to be freely and realistically balanced to determine which persons should properly be called independent contractors. Because the Worker's Disability Compensation Act is concerned with the correction of economic evils through remedies unknown to the common law, the control test, which is a creature of the common law, is not responsive to the purpose of the statute to afford maximum benefit to injured parties. The defendant who relies on the Worker's Disability Compensation Act to support his defense should not be heard to complain that a rule used to construe the act is used here. The economic reality test will be applied in third-party tort actions where the affirmative defense of immunity as a co-employee is raised under the Worker's Disability Compensation Act.

6. Determination of disputed issues of fact is peculiarly the jury's province. Even where the evidentiary facts are undisputed, it is erroneous to decide the matter as one of law if a jury could draw conflicting inferences from the evidentiary facts and thereby reach differing conclusions as to ultimate facts. However, if the evidence concerning the status of a party defendant is reasonably susceptible of but a single inference, the question is one purely of law to be decided by the court.

7. In this case the evidentiary facts were undisputed, and

they are susceptible of only one inference, that the defendant was an independent contractor. The only element of the economic reality test in issue was whether the evidence of control was sufficient to establish an employee relationship between defendant Billot and the trailer park. In his brief the defendant generally accepts the plaintiff's statement of facts except that he presents his argument and additional evidence concerning the element of control. Assuming, *arguendo,* that the element of control has been established, it would not be sufficient to satisfy the defendant's burden of proof on the affirmative defense. Control is only one of several factors to be considered under the economic reality test. The test views its elements as a whole, assigning primacy to no single one.

8. Although the defendant and the trial court proceeded under the impression that the control test applied, it is not necessary to remand this case for a new trial using the economic reality test because 1) the trial court did not rule until the close of the proofs which test was to be applied, 2) the plaintiff elicited abundant evidence regarding the other elements of the economic reality test which the defendant did not rebut, and 3) the defendant on appeal has accepted the plaintiff's statement of facts, with the only exception concerning the issue of control.

9. The defendant was an independent contractor as a matter of law. He testified that he and his father owned a small business, Billot Excavating Company. They owned excavating equipment, and did excavating, roadbuilding, leveling, and grading, and hauled sand and gravel. The defendant considered himself self-employed, handled his own social security and income tax deductions, was not carried on the employment rolls of the persons who hired him, and supplied and maintained all his own equipment and materials. During the summer that the decedent was killed, the defendant worked for a number of different people or companies, sometimes as many as three in a single day. He arranged his own work schedule. The defendant testified that he would not have been entitled to unemployment compensation benefits from the trailer park and would have no seniority or other employment rights. He was not hired in connection with operating the trailer park, but only to perform the special project of digging the trench. He did not depend on that job for his income, but had many customers. He held himself out to the public, through the Yellow Pages of the telephone book, as a contractor, skilled in excavating work, and it was the custom of the community that such work was ordinarily done by independent contractors. The

defendant testified that when he was hired to do the job he did not think of himself as an employee of the trailer park's owner, but felt that he had a right to hire a helper or substitute. Therefore, all the elements of the economic reality test, with the possible exception of control, apply in this case to show clearly that the defendant was an independent contractor. However, because it is unclear whether the jury's verdict was based on a finding that the defendant was an employee of the trailer park or that the decedent was contributorily negligent, the case is remanded to the trial court for a new trial on the issue of negligence.

Reversed.

80 Mich App 263; 263 NW2d 345 (1977) reversed.

1. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — ECONOMIC REALITY.

The economic reality test is the proper guide to determine whether an employment relation exists under the terms of the Worker's Disability Compensation Act; it is not a matter of terminology, but of the realities of the work performed.

2. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — ECONOMIC REALITY.

Control is a factor in determining, using the economic reality test, whether an employment relation exists under the terms of the Worker's Disability Compensation Act, as is payment of wages, hiring and firing, and whether the work performed is an integral part of the regular business of the employer, a contribution to the accomplishment of a common objective; but the test of economic reality views these elements as a whole, assigning primacy to no single one.

3. MASTER AND SERVANT — TORTS — *RESPONDEAT SUPERIOR* — CONTROL.

The purpose of the common-law "control" test for defining an employment relation is to limit the scope of the master's vicarious liability for the acts committed by a servant which injure a third party, because the extent to which the employer had a right to control the detailed activities of an employee is highly relevant to whether the employer ought to be liable for them; the control test is also used to determine when an independent contractor has become an employee for purposes of liability of the employer under the doctrine of *respondeat superior* by the employer's exercise of a degree of control which is inconsistent with the status of independent contractor.

4. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — MASTER AND SERVANT — CONTROL — EMPLOYMENT.

The "control" test, which was adopted at common law to determine an employer's liability for the acts of an employee under the doctrine of *respondeat superior,* is inappropriate to defining an employment relation within the meaning of the provision of the Worker's Disability Compensation Act which permits a third-party tort action against parties other than employers or fellow employees (MCL 418.131, 418.827[1]; MSA 17.237[131], 17.237[827][1]).

5. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — EMPLOYMENT — ECONOMIC REALITY.

The "economic reality" test is the appropriate test to determine which persons should be subject under the terms of the Worker's Disability Compensation Act to third-party tort liability for an injury to a worker which is compensable under the act and which persons are exempt from liability as being in the same employ as the injured worker (MCL 418.131, 418.827; MSA 17.237[131], 17.237[827]).

6. WORKMEN'S COMPENSATION — COMMON LAW.

The Worker's Disability Compensation Act is concerned with the correction of economic evils through remedies unknown to the common law with the purpose of affording maximum benefit to injured workers; therefore a common-law test for determining if an employment relation exists is not responsive to the provisions of the statute (MCL 418.101 *et seq.;* MSA 17.237[101] *et seq.).*

7. WORKMEN'S COMPENSATION — THIRD-PARTY ACTION — STATUTES — CONSTRUCTION.

A defendant in a tort action who relies on the Worker's Disability Compensation Act to support his defense that he was not liable as a third-party tortfeasor because he was in the same employ as the injured worker should not be heard to complain that a rule which has been used to construe the act is used to adjudicate his defense (MCL 418.131, 418.827; MSA 17.237[131], 17.237[827]).

8. TRIAL — EVIDENCE — QUESTION OF FACT — JURY.

Determination of disputed issues of fact is peculiarly the jury's province; even where the evidentiary facts are undisputed, it is improper to decide the matter as one of law if a jury could draw conflicting inferences from the evidentiary facts and thereby reach differing conclusions as to ultimate facts.

9. Workmen's Compensation — Third-Party Action — Employment — Question of Fact — Question of Law.

Whether a defendant is a person subject to liability as a third-party tortfeasor under the terms of the Worker's Disability Compensation Act or the tort action is abrogated by the act is a question purely of law to be decided by the court if the evidence on the issue is reasonably susceptible of but a single inference; but where the facts bearing on the issue of the defendant's status are either disputed, or conflicting inferences may be reasonably drawn from the known facts, it is error to withhold the issue from the jury (MCL 418.131, 418.827; MSA 17.237[131], 17.237[827]).

10. Workmen's Compensation — Third-Party Action — Employment.

A defendant in a third-party tort action for the wrongful death of a worker in the course of his employment was, as a matter of law, an independent contractor, not a person in the "same employ" as the injured worker under the terms of the Worker's Disability Compensation Act, where the evidentiary facts were undisputed and susceptible only of that one inference, the defendant and his father owned an excavating business, he considered himself self-employed and was not carried on the employment rolls of the injured worker's employer, he handled his own social security and income tax deductions, he supplied his own equipment and materials, he received a flat rate for the job he was doing when the worker was killed, he worked for a number of different people or companies and arranged his own schedule, he stated that he was not eligible for unemployment benefits, seniority or other employment rights on the job, he was only hired to do a special excavating project for the employer, he held himself out to the public, through the Yellow Pages of the telephone book, as a contractor skilled in excavation work, it was the custom in the community that such work was ordinarily done by independent contractors, and the defendant testified that when he was hired to do the job he did not think of himself as an employee and that he thought he had the right to hire a helper or substitute (MCL 418.131, 418.827; MSA 17.237[131], 17.237[827]).

11. Workmen's Compensation — Third-Party Action — Employment — Economic Reality — Control.

The element of control of an employer over a third-party tortfeasor who injured an employee in the course of his employment, assuming that it has been established, would not be sufficient to satisfy the defendant's burden of proof on the affirmative

defense that he was in the "same employ" as the injured worker under the terms of the Worker's Disability Compensation Act (MCL 418.131, 418.827; MSA 17.237[131], 17.237[827]).

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *David K. Barnes),* for plaintiff.

*Drillock, Atkins, Schrope & Marcus* for defendant.

FITZGERALD, J. This appeal arises from a wrongful death action brought by decedent's widow. Plaintiff contended at trial that her husband's death resulted from the negligence of defendant.

Defendant, an excavation contractor, was hired to excavate a trench on the premises of the Sunset Trailer Park in Sandusky, Michigan. The excavation was part of a planned expansion of the trailer park which required that a trench be dug from the existing septic system to the expansion sewer line.

⋅ The owner of the trailer park, Thomas Boyle, hired the prior owner, O. J. Campbell, to supervise the work involved in the expansion of the trailer park. Plaintiff's decedent, Milo Nichol, a retiree who resided in the trailer park, was also hired by Boyle to help with the expansion project.

On August 9, 1971, the excavation of the trench took place with defendant Billot, and Campbell and Nichol present. The trench was over 9 feet deep, 10 to 12 feet long, and 30 inches wide, and the walls were not sloped, braced or shored in any fashion.

After the excavation was completed, Nichol climbed into the trench for the purpose of making a hole in the septic tank. Shortly after he entered the trench the west wall collapsed and Nichol, who could not escape, was killed almost instantly.

Subsequently, plaintiff received workmen's com-

pensation benefits from Boyle. Plaintiff then proceeded to bring suit against defendant as a third-party tortfeasor as allowed by MCL 418.827(1); MSA 17.237(827)(1).

At trial, plaintiff contended that defendant was an independent contractor and that he had negligently failed to slope the walls of the trench or to use bracing devices as required by accepted safety standards. Defendant relied upon two affirmative defenses. First, defendant claimed that he was not an independent contractor, but that he was a co-employee of decedent. Therefore he claimed that plaintiff's cause of action was barred by that provision of the Worker's Disability Compensation Act which bars all suits against co-employees for injuries sustained in circumstances otherwise compensable under the act.[1] MCL 418.827(1); MSA 17.237(827)(1). Second, defendant claimed that plaintiff's decedent was contributorily negligent.

After a three-day trial in March 1976, the jury returned a verdict of no cause of action.

The Court of Appeals affirmed the jury's verdict, with Judge BRENNAN dissenting. 80 Mich App 263; 263 NW2d 345 (1977).

We granted leave to consider the following two issues:

(1) In a tort action where the defendant relies on the affirmative defense that the plaintiff's exclusive remedy is under the Worker's Disability Compensation Act and the basis of such affirmative defense is the co-employee status of the plaintiff and defendant, what is the proper test by which to determine whether the plaintiff and the defendant are co-employees; and

---

[1] *Sergeant v Kennedy,* 352 Mich 494; 90 NW2d 447 (1958).

(2) Whether the question of defendant's status is an issue of law for the court or an issue of fact for the jury. 402 Mich 922 (1978).

I

At trial, plaintiff contended that because defendant asserted an affirmative defense based on a provision of the workmen's compensation statute, the proper test to determine the employment status of defendant was the economic reality test. However, the trial court agreed with defendant that the economic reality test was limited to workmen's compensation cases and instructed the jury to apply the control test.

The Court of Appeals majority agreed with the trial court, stating that the mere fact that a defendant asserts the co-employee immunity from suit provision of the workmen's compensation statute does not mean that the economic reality test must be applied in a tort action. Judge BRENNAN favored the economic reality test as the logical test to use in deciding whether a defendant can use the Worker's Disability Compensation Act as a shield against a plaintiff.

Prior to *Tata v Muskovitz,* 354 Mich 695; 94 NW2d 71 (1959), the only test for determining whether a person was an employee or an independent contractor centered on the question of control. The control theory is the traditional common-law test used to delineate the master-servant relationship.[2] The theory, in its delineation of the servant concept, has for its purpose the definition and delimitation of the scope of the master's liabil-

---

[2] For a history of the control test, see Stevens, *The Test of the Employment Relation,* 38 Mich L Rev 188 (1939).

ity under the doctrine of *respondeat superior.*[3] Because most compensation acts contain no specific definition of the term "employee", it was generally taken for granted that the common-law definition of employee, or servant, used for purposes of vicarious tort liability was to be used for purposes of workmen's compensation laws.[4]

In *Tata v Muskovitz, supra,* this Court adopted the dissenting opinion of Mr. Justice TALBOT SMITH in *Powell v Employment Security Comm,* 345 Mich 455; 75 NW2d 874 (1956), in which he set forth the economic reality test as the proper guide to relevant interpretation of the workmen's compensation statute. See, also, *Schulte v American Box Board Co,* 358 Mich 21; 99 NW2d 367 (1959); *Goodchild v Erickson,* 375 Mich 289; 134 NW2d 191 (1965); *Solakis v Roberts,* 395 Mich 13; 233 NW2d 1 (1975); *Askew v Macomber,* 398 Mich 212; 247 NW2d 288 (1976).

Justice SMITH expanded on the relevant factors to be considered under the economic reality test in *Schulte v American Box Board Co, supra,* p 33:

"This is not a matter of terminology, oral or written, but of the realities of the work performed. Control is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one."

Also, in determining the economic realities a court is to determine whether the work being performed is an integral part of the regular business of the

[3] Once it has been determined that the man at work is a servant, the master becomes subject to *respondeat superior* liability. It must then be determined whether the tortious conduct of the servant arose within the scope of the employment. See Prosser, Torts (4th ed), § 70, p 460.

[4] 1B Larson's Workmen's Compensation Law, § 43.10, pp 8-1, 8-2.

employer, "a contribution to the accomplishment of a common objective". *Powell v Employment Security Comm, supra,* 478. See, also, *McKissic v Bodine,* 42 Mich App 203; 201 NW2d 333 (1972).

The ultimate purpose of the economic reality test is to effectuate the goals of the social legislation by determining whether or not the relationship is of the type intended to be protected by the act. *National Labor Relations Board v Hearst Publications, Inc,* 322 US 111; 64 S Ct 851; 88 L Ed 1170 (1944); *United States v Silk,* 331 US 704; 67 S Ct 1463; 91 L Ed 1757 (1947); *Powell v Employment Security Comm, supra,* 478.

The circumstances presented in the instant case do not fit neatly into the purposes sought to be effectuated in either the control test or the economic reality test. In the present case, there is no *respondeat superior* liability involved, nor is there any application for workmen's compensation benefits involved. Thus, we must determine which test, if either, should be applied in this particular situation. We will consider the application of each test *seriatim.*

Defendant argues that because this is a tort suit the control test is applicable and that the economic reality test is inapplicable because that principle has been confined to workmen's compensation cases.

We think that it is necessary to distinguish the present case from those tort actions which involve the vicarious liability of a master for the acts of his servant vis-à-vis a third party. The instant case is atypical of those cases to which the control test has been traditionally applied in that there is no vicarious liability involved here. Rather, the liability of defendant for his own acts is the only liability at issue.

As stated above, the purpose of the control test is to define and delimit the circumstances under which a master should be held liable for the acts committed by a servant which injure a third party. As described by Larson in his treatise on Workmen's Compensation Law:

"The 'servant' concept at common law performed one main function: to delimit the scope of a master's vicarious tort liability. This tort liability arose out of detailed activities carried on by the servant, resulting in some kind of harm to a third person. The extent to which the employer had a right to control these detailed activities was thus highly relevant to the question whether the employer ought to be legally liable for them."[5]

The control test is also used to determine when an independent contractor has become an employee for purposes of *respondeat superior* liability on the part of his employer who has exercised a degree of control inconsistent with independent contractor status. *Powell v Employment Security Comm, supra,* 471.

In his closing argument, defense counsel admitted that his client was for general purposes an independent contractor, but contended that in this instance, because Campbell exercised control over him, defendant became an employee.

In *Powell, supra,* 471, Justice Smith stated the following:

"It is a complete perversion of this principle [i.e., that an independent contractor is liable for his own torts unless his employer assumes control] to employ the control exception (an independent contractor does not remain such if made subject to control) as a test for his status as an independent contractor in the first place. It is much as though we employed the well-known excep-

_____

[5] *Id.,* § 43.42, pp 8-10, 8-11.

tions to the corporate entity doctrine as tests for the existence of the corporation itself. Confusion is inevitable."

As indicated by Justice SMITH, the control test is not intended to be a definition of independent contractor status in the first place. It is also a misuse of the control test to use it as a definition of employee status for purposes other than for which it was originally intended. The adoption of the control test at common law in order to determine the applicability of the servant concept was limited to those situations where the question was whether it was appropriate to apply the theory of *respondeat superior.* Therefore, because there is no question of the vicarious liability of a master involved here, we find the control test to be inappropriate.[6]

Turning to the economic reality test, we find that although actual payment of workmen's compensation benefits is not at issue here, significant objectives of the workmen's compensation statute are involved.

A recipient of workmen's compensation benefits is limited in his right to sue those persons responsible for his injuries. A recipient of benefits may not sue his employer or a fellow employee. MCL 418.131; MSA 17.237(131); MCL 418.827(1); MSA 17.237(827)(1).[7] With permission of § 827(1), a recipient may bring an action for wrongful death against third parties other than employers or fellow employees. *Hix v Besser Co,* 386 Mich 499; 194 NW2d 333 (1972).

Thus, while one of the purposes of § 827(1) is to

---

[6] For this reason, we find *Sliter v Cobb,* 388 Mich 202; 200 NW2d 67 (1972), which defendant relies on, to be inapplicable to the case at bar.

[7] See fn 1.

prohibit suits by compensation recipients against co-employees, another purpose of that same section is to permit the recipient recovery for his injuries beyond the statutory benefits through the provision allowing suit against certain negligent third parties.[8]

An independent contractor is a third party subject to suit under § 827(1). This is appropriate because an independent contractor is often in as good a position as, if not better than, his employer to know the hazards of his trade and the concomitant safety precautions. To allow the independent contractor to abandon accepted safety measures and then disclaim responsibility for his omission because his employer exercised some degree of control would not only deprive a compensation recipient of his opportunity to sue under § 827(1), it would also seriously endanger the safety of workers such as the deceased.

Thus, we conclude that other factors beyond the control element should be considered before we extend the bar to plaintiff's common-law right to sue in this situation. We find that the economic reality test provides those other factors. In emphasizing a "freer and more realistic balancing of all the relevant factors in each case"[9] to determine which persons are properly denominated employees, the test also necessarily achieves a freer and more realistic determination of which persons should be properly denominated independent contractors.

Although workmen's compensation benefits are not at issue here, the policies behind the act are involved through the invocation of § 827(1). We

---

[8] We note that the right of the employer or insurance carrier to be reimbursed is also affected by this decision.

[9] *Renfroe v Higgins Rack Coating & Manufacturing Co, Inc,* 17 Mich App 259, 264-265; 169 NW2d 326 (1969).

think that as the economic reality test is the appropriate test to determine which persons are intended to be included within the act, it is also the appropriate test to determine which persons should not be subject to the act's bar against common-law remedies. Because the act is concerned with the correction of economic evils through remedies unknown to the common law, the control test, a creature of common law, is not responsive to the provisions of the statute. We deem it appropriate to apply the principle which accomplishes the purpose of the social legislation involved here, which is to afford maximum benefit to injured parties. As it is defendant who relies on the worker's compensation act to support his defense, he should not be heard to complain that a rule utilized to construe the act's provisions is to be employed.

In conclusion, we find that the application of the control test in a tort action where *respondeat superior* liability is not involved is inappropriate. We hold that the economic reality test, in its consideration of factors beyond the control element, achieves a more realistic determination of the independent contractor/employee question in cases where the affirmative defense of co-employee immunity under § 827(1) is utilized.

## II

We must next determine whether the question of defendant's status is an issue of law for the court or an issue of fact for the jury.

Both parties take positions on this issue which are inconsistent with the ones they asserted prior to trial. Shortly after suit was commenced, defendant moved for summary judgment claiming that he was a co-employee of plaintiff's decedent and

that plaintiff's suit was barred by the operation of § 827(1). At that juncture, plaintiff opposed the motion, arguing that there were disputed facts concerning the issue of defendant's status and that the issue should be submitted to the jury. The trial judge denied defendant's motion, holding that the issue presented was a question of fact.

Subsequently, at the close of the proofs, plaintiff's attorney moved to strike defendant's affirmative defense based on § 827(1). He contended that there were no disputed questions of fact regarding the relationship and thus it was a question of law for the judge to decide. Defense counsel opposed the motion, arguing that it was a question of fact for the jury to resolve. The trial court denied plaintiff's motion, ruling that there were facts upon which reasonable minds could differ.

On appeal, the parties retain their latter positions, with plaintiff contending there existed no factual dispute regarding defendant's status, and with defendant contending there existed questions of fact on this issue.

The Court of Appeals majority held that there were issues of fact to be determined preliminary to the disposition of the independent contractor/employee question. As one example of such factual issues, the court stated that plaintiff claimed defendant was an independent contractor while defendant claimed that Campbell exercised complete control over him. The Court of Appeals majority obviously was influenced in their decision on this issue by their previous determination that the control test was the proper theory to be applied.

The dissent concluded that the question of defendant's employment status was one of law, citing this Court's decision in *Askew v Macomber, supra.*

*Askew* involved an appeal from a Workmen's

Compensation Appeal Board decision. We noted there that the appellate courts of this state are bound by the appeal board's findings of fact. In *Askew,* we said that the question of whether the defendant therein was the plaintiff's employer for purposes of workmen's compensation was an issue of law properly left to our determination.

In *Askew,* we cited *Renfroe v Higgins Rack Coating & Manufacturing Co, Inc,* 17 Mich App 259, 262; 169 NW2d 326 (1969). The *Renfroe* Court's analysis of the issue presented herein is instructive:

"In the case at bar, the record contains numerous interrogatories, depositions, and affidavits, which set out the underlying events and circumstances in great detail. These, as well as the agreed statement of facts submitted for purposes of this appeal, reveal that there is no dispute as to any of the underlying facts. Plaintiff's only contention is that on the basis of the agreed facts, defendant should not be labeled an 'employer' within the meaning of the workmen's compensation law. This is not a question of fact for a jury to decide; it is a question of law which must ultimately be decided by the courts."

However, in both *Askew* and *Renfroe* the reviewing Court was bound by the facts below, the former case involving findings of fact by the WCAB and the latter involving facts stipulated by the parties. Thus, all issues of fact as well as the usual process of drawing permissible inferences from testified facts were thereby eliminated, and all that was necessary was that the court apply the relevant legal principles.

It is a basic proposition of law that determination of disputed issues of fact is peculiarly the jury's province. *Wight v H G Christman Co,* 244 Mich 208, 211; 221 NW 314 (1928). Even where the

evidentiary facts are undisputed, it is improper to decide the matter as one of law if a jury could draw conflicting inferences from the evidentiary facts and thereby reach differing conclusions as to ultimate facts. See *Simerka v Pridemore,* 380 Mich 250; 156 NW2d 509 (1968) (Souris, J.).

In *Flick v Crouch,* 434 P2d 256 (Okla, 1967), the Oklahoma Supreme Court expressed a rule which incorporates the principles we have expressed above and applied it to a case which contains a question similar to that which confronts us herein. *Flick* involved a wrongful death action brought by a widow of a deceased workman against a third party. Oklahoma also has a provision in its workmen's compensation statute which accords immunity to the employer and his employees from common-law liability for negligence. Okla Stat 1961, tit 85, § 44(b). The question involved in Flick was whether the defendants were independent contractors or employees as determined by the various factors applied by Oklahoma courts which are virtually identical to the factors considered in this state under the economic reality test. The Flick Court set forth the following rule:

"When a defendant's status forms a material issue in an evidentiary proceeding, * * * which has for its object to determine whether the action sought to be prosecuted is one abrogated or taken away by the Workmen's Compensation Law, * * * or 'reserved' to the workman (or his widow) * * * the rule to be applied by the trial court should be the same as that which governs at the trial: if the evidence concerning the status of a party defendant is reasonably susceptible of but a single inference, the question is one purely of law to be decided by the court * * * but where the facts bearing on such issue are either disputed, or conflicting inferences may be reasonably drawn from the known

facts, it is error to withhold the issue from the determination of the jury."

In applying the *Flick* rule to the instant case, we find that the evidentiary facts were undisputed and that they were susceptible of only one inference, that is that defendant was an independent contractor.

After reviewing the trial transcript and the briefs we find that the only element of the economic reality test in question was whether the interpretation of evidence bearing on the issue of control was such as to establish an employee relationship. In addition, in his brief defendant accepts plaintiff's statement of facts with the exception of any conflict with three paragraphs which defendant sets forth in his own statement of facts. In those three paragraphs defendant presents his theory of the case and additional evidence to support his theory of control.

However, assuming *arguendo* that the control element has been established, it would not be sufficient to satisfy defendant's burden of proof on the affirmative defense. Under the economic reality test control is only one of several factors to be considered. *Powell v Employment Security Comm, supra,* 479 (SMITH, J., dissenting). The economic reality test "views these elements as a whole, *assigning primacy to no single one". Schulte v American Box Board, supra,* 33 (SMITH, J., concurring). (Emphasis added.)

Although we realize that defendant was laboring under the impression at trial, as affirmed by the trial court, that the control test applied and therefore may have felt that it was unnecessary to introduce evidence pertinent to the other factors of the economic reality test, we do not believe that it

is necessary to remand for a new trial on this basis for several reasons.

First, the trial court did not rule until the close of the proofs that the control test, and not the economic reality test, was the applicable rule.[10]

Second, plaintiff elicited abundant evidence from the witnesses regarding the other elements of the economic reality test and defendant did not rebut this evidence.

Third, defendant accepts (with the exception noted above) plaintiff's statement of facts. Those facts include the following:

"Mr. Billot testified that, in 1971, he and his father owned a small business known as Billot Excavating Company. They owned a backhoe, a bulldozer, a front-end loader and three trucks. This company did excavating, roadbuilding, leveling, grading and hauled sand and gravel.

"In 1971 Mr. Billot considered himself as being self-employed. He handled his own social security and income tax deductions. When hired to do excavating work he was not carried on the employment rolls of the person who hired him. He was paid $12 per hour for the use of the backhoe. He supplied all of his own equipment and materials and did all of his own maintenance to such equipment.

"When Mr. Billot did work for Mr. Boyle on the trailer park he received a flat rate for the time that he spent. Mr. Boyle did not deduct social security or in-

[10] Normally, this point alone would foreclose any further discussion as defendant would proceed at his own peril if he chose to ignore a theory which he knew plaintiff was relying on. However, it is not clear at what point plaintiff asserted the economic reality test as the proper rule. As plaintiff's counsel admits in his brief, plaintiff responded to the summary judgment motion in terms of the control test, not realizing at that time that it did not apply. Plaintiff did not assert the economic reality test in his opening statement to the jury. The first discussion on the record regarding which test was proper occurred at the close of the proofs. However, as discussed, *infra,* plaintiff's counsel elicited testimony at trial relevant to the factors of the economic reality test.

come taxes from Mr. Billot's bills. Mr. Boyle never sent Mr. Billot a W-2 statement, or even took his social security number.

"During the summer of 1971, Mr. Billot worked for a number of different people or companies, sometimes working for as many as three people in a single day. Mr. Billot arranged his own schedule.

"Mr. Billot testified that if Mr. Boyle had told him not to work or fired him, he would have no right to draw unemployment compensation and would have no seniority or other employment rights. He further testified that he was not hired to do anything having to do with the operation of the trailer park, but only to perform the special project of digging the trench.

"Mr. Billot testified further that he did not depend on his income from Mr. Boyle to support himself, but that he had many customers. He held himself out to the public, through the Yellow Pages of the phone book, as a *contractor* skilled in the doing of excavating work. Furthermore, it was the custom of the community that such work was ordinarily done by independent contractors. In fact, when Mr. Billot was hired by Mr. Boyle, he did not think of himself as an employee of Mr. Boyle. He felt that he had the right to hire a helper or substitute."

The above excerpt, as verified by the trial transcript, leads us to one conclusion. Applying the economic reality test to the instant case, we find that all of the elements, with the possible exception of control, clearly point to defendant's independent contractor status. Thus, we conclude as a matter of law that defendant was an independent contractor.

## CONCLUSION

The economic reality test is the proper test to determine co-employee status in a tort suit where *respondeat superior* liability is not at issue and

where the affirmative defense of co-employee immunity under the workmen's compensation statute is asserted.

In order to determine whether the question of defendant's status is an issue of law for the court or an issue of fact for the jury the following rule is applicable:

"[I]f the evidence concerning the status of a party defendant is reasonably susceptible of but a single inference, the question is one purely of law to be decided by the court * * * but where the facts bearing on such issue are either disputed, or conflicting inferences may be reasonably drawn from the known facts, it is error to withhold the issue from the determination of the jury." *Flick v Crouch, supra.*

In the instant case, we conclude, as a matter of law, that defendant was an independent contractor. Because it is unclear whether the jury's verdict was based on § 827(1) or contributory negligence, we remand to the trial court for a new trial on the issue of negligence.

Reversed, with costs to plaintiff.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, RYAN, and BLAIR MOODY, JR., JJ., concurred with FITZGERALD, J.