# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

RONALD FOUNTAINE, JR.,

      Plaintiff-Appellee,

v

RANDY STEVEN HERSEY,

      Defendant-Appellant,

and

ESTATE PLANNING AND PRESERVATION,
INC., JOHN/JANE DOE, BRISTOL WEST
PREFERRED INSURANCE COMPANY,
ANTHONY DELPIOMBO, and LIBERTY
MUTUAL INSURANCE COMPANY,

      Defendants.

UNPUBLISHED
October 23, 2014

No. 315410
Wayne Circuit Court
LC No. 12-000286-NI

RONALD FOUNTAINE, JR.,

      Plaintiff-Appellee,

V

RANDY STEVEN HERSEY, JOHN/JANE DOE,
BRISTOL WEST PREFERRED INSURANCE
COMPANY, ANTHONY DELPIOMBO, and
LIBERTY MUTUAL INSURANCE COMPANY,

      Defendants,

and

ESTATE PLANNING AND PRESERVATION,
INC.,

      Defendant-Appellant.

No. 318689
Wayne Circuit Court
LC No. 12-000286-NI

Before: FITZGERALD, P.J., and WILDER and OWENS, JJ.

-1-

PER CURIAM.

In these consolidated appeals, in Docket No. 315410, defendant Randy Steven Hersey appeals by leave granted[1] an order of the trial court denying his motion for summary disposition of plaintiff's automobile negligence claim. In Docket No. 318689, defendant Estate Planning and Preservation, Inc. (EPP) appeals by leave granted[2] an order of the trial court denying its motion for summary disposition regarding plaintiff's vicarious liability theory. We affirm.

## I. FACTS

During the evening of November 7, 2011, plaintiff was the passenger in a vehicle driven by Anthony Delpiombo. The two were headed westbound on I-94. At approximately 7:20 p.m., the men came upon a 12-foot extension ladder in the road. According to plaintiff, the ladder was lying in the far left lane of travel and on the shoulder of the road; according to Delpiombo, it was lying in the center lane and protruding slightly into the left lane. Delpiombo was able to avoid the ladder without incident. According to plaintiff, Delpiombo had plenty of time to slow down steer to the right around the ladder; according to Delpiombo, he did not notice the ladder with enough time to brake, but was able to steer to the left and avoid the ladder without driving on the shoulder of the road.

Delpiombo pulled over to the side of the road, and backed up towards the ladder. According to both men, they intended to remove the ladder from the roadway to prevent others from striking it. Delpiombo stopped and turned on his hazard lights. Plaintiff exited the vehicle and began jogging toward the ladder, facing oncoming traffic. According to plaintiff, traffic was backing up around the ladder at this point, and other vehicles were steering to the right around the ladder. While plaintiff was jogging "in the grass" to retrieve the ladder, he was hit by Hersey, who plaintiff claimed was on his cell phone. Plaintiff was thrown through the air and landed in the grassy median between the eastbound and westbound lanes of I-94. He sustained serious injuries, but survived the accident.

According to Hersey, the accident occurred at approximately 7:30 p.m. He was traveling home after completing a meeting with a client. Hersey was "very close to" the ladder when he first saw it, only seeing it "at the last second." Hersey admitted that he had been talking on his cell phone before the accident, but stated that he ended the call approximately two miles before he encountered the ladder. He was traveling at 70 or 71 miles per hour. After he saw the ladder, he swerved to the left to avoid it, as that was the path of least resistance. He hit the rumble strips on the shoulder of the road immediately. Hersey saw plaintiff running towards him on the rumble strips. Hersey hit his brakes, but could not stop before plaintiff hit his windshield.

[1] *Fountaine, Jr v Hersey*, unpublished order of the Court of Appeals, entered August 8, 2013 (Docket No. 315410).

[2] *Fountaine, Jr v Hersey*, unpublished order of the Court of Appeals, entered March 5, 2014 (Docket No. 318689).

In his complaint, plaintiff alleged Hersey negligently drove his automobile, causing plaintiff's injuries. Plaintiff alleged that EPP, as Hersey's employer, was vicariously liable for Hersey's negligence. Hersey filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that (1) plaintiff's negligence claim against him was precluded by the sudden emergency doctrine, and (2) even if he had acted negligently, plaintiff could not recover noneconomic damages because plaintiff was more than 50% at fault for the accident. The trial court denied the motion, finding that a question of fact existed regarding both issues.

EPP filed a motion for summary disposition, arguing that (1) Hersey was an independent contractor, and accordingly, EPP could not be vicariously liable for his negligence, and (2) even if Hersey was an employee, the accident occurred outside the scope of Hersey's employment. The trial court denied the motion, finding that a question of fact existed regarding whether Hersey was an employee or an independent contractor under the economic reality test. The trial court denied the motion regarding whether the accident occurred in the scope of Hersey's employment without explanation.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Hersey brought his motion for summary disposition pursuant to MCR 2.116(C)(10). EPP brought its motion pursuant to MCR 2.116(C)(8) and (C)(10). However, EPP attached a variety of documentary evidence to its motion, and the trial court relied on this evidence when deciding the motion. Thus, we treat EPP's motion as being brought pursuant to MCR 2.116(C)(10). *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden*, 461 Mich at 120. A reviewing court considers the documentary evidence in a light most favorable to the nonmoving party. *Id.* "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id.* A genuine issue of material fact exists "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## III. DOCKET NO. 315410

### A. THE SUDDEN EMERGENCY DOCTRINE

Hersey first argues that the trial court erred when it found that a question of fact existed regarding the application of the sudden-emergency doctrine. We disagree.

The sudden-emergency doctrine is a judicially created principle, which excuses ordinarily negligent conduct because of an unexpected emergency that requires an immediate response, negating the opportunity to take reasonable action to avoid a danger. *Socony Vacuum Oil Co v Marvin*, 313 Mich 528, 546; 21 NW2d 841 (1946). Our Supreme Court explained the rationale behind the sudden-emergency doctrine:

> "One who suddenly finds himself in a place of danger, and is required to act without time to consider the best means that may be adopted to avoid the

impending danger is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence." [*Id.*, quoting *Huddy on Automobiles* (8th ed), p 359.]

The sudden-emergency doctrine is an extension of the reasonably prudent person rule, and "the test to be applied is what that hypothetical, reasonably prudent person would have done under all the circumstances of the accident, whatever they were." *Baker v Alt*, 374 Mich 492, 496; 132 NW2d 614 (1965). "To come within the purview of this rule the circumstances attending the accident must present a situation that is 'unusual or unsuspected.' " *Vander Laan v Miedema*, 385 Mich 226, 232; 188 NW2d 564 (1971), citing *Barringer v Arnold*, 358 Mich 594, 599; 101 NW2d 365 (1960). To be "unusual," the circumstances must vary "from the everyday traffic routine confronting the motorist." *Id*. An "unsuspected" hazard is one that "connotes a potential peril within the everyday movement of traffic." However, "it is essential that the potential peril had not been in clear view for any significant length of time, and was totally unexpected." *Id.*

In this case, when viewing the evidence in a light most favorable to plaintiff, the nonmoving party, there is a question of fact whether the ladder was unsuspected. Hersey testified that it was dark and was misting at the time he came upon the ladder, and that he did not see the ladder until the last instant. Plaintiff also agreed that it was starting to get dark outside and was misting. While Hersey testified that he did not see the ladder until the "last second," he later testified that he "saw debris up ahead. [H]e couldn't determine what it was, something up ahead close but it was just seconds later that then [he] realized, oh, my gosh, this thing's a ladder, get out of the way . . . ."

According to plaintiff and Delpiombo, the ladder had been in the roadway long enough for Delpiombo to see it, avoid it, stop on the side of the road, and back up towards it. There was also enough time for plaintiff to leave the truck and jog toward the ladder. Before the moment Hersey encountered the ladder, Delpiombo's vehicle was parked on the side of the road, 100 to 150 feet away from the ladder, with its hazard lights flashing. Further, plaintiff testified that, after Delpiombo stopped his truck, numerous other vehicles were able to slow down and avoid the ladder, causing traffic to back up on the highway. That many other vehicles were able to see the ladder and avoid it strongly indicates that the ladder was in clear view. Therefore, taking the evidence in a light most favorable to plaintiff, there is a question of fact whether the ladder had been in clear view for a substantial length of time, to make it unsuspected.

Hersey also argues that plaintiff's existence on the roadway was a second sudden emergency, which he may not be faulted for failing to avoid. He argues that plaintiff's existence near the roadway was unsuspected. There was evidence that it was dark and misting, making visibility low. However, plaintiff also presented evidence establishing that plaintiff had been in clear view for a significant amount of time, long enough for him to jog towards the ladder, see Hersey's vehicle heading towards him, and jump to avoid being struck. Therefore, when viewing the evidence in a light most favorable to the nonmoving party, there is a question of fact whether plaintiff's existence on the roadway was a sudden emergency.

-4-

## B. COMPARATIVE FAULT

Hersey next argues that the trial court erred when it found that a question of fact existed regarding whether plaintiff was more than 50 percent at fault for the accident. We disagree.

Although Michigan's no-fault act has eliminated individual tort liability for most automobile accidents, pursuant to MCL 500.3135(1), "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent disfigurement." Pursuant to MCL 500.3135(2)(b), "Damages shall be assessed on the basis of comparative fault, except that damages shall not be assessed in favor of a party who is more than 50% at fault." Thus, if plaintiff is found to be more than 50 percent at fault for his injuries, he may not recover noneconomic damages. MCL 500.3135(2)(b). However, as a general matter, questions regarding comparative fault are for the jury to decide, and are not subject to summary disposition. *Rodriguez v Solar of Mich, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991). But if a reasonable juror could only find the plaintiff more than 50 percent at fault for the accident, summary disposition is appropriate under MCR 2.116(C)(10). *Huggins v Scripter*, 469 Mich 898, 898-899; 669 NW2d 813 (2003).[3]

Hersey argues that a rational jury could only find that plaintiff is more than 50 percent at fault for the accident because he chose to exit the truck and walk along the side of the highway, placing himself in danger. A pedestrian "must take such care for his own safety as a reasonable, careful, prudent person would do under similar circumstances." *Malone v Vining*, 313 Mich 315, 321; 21 NW2d 144 (1946) (quotation marks and citation omitted). This duty requires a pedestrian to observe oncoming traffic and exercise reasonable care under the circumstances. *Id*. However, in the context of pedestrian-automobile accidents, this Court has held, "Negligence and contributory negligence of a pedestrian are questions of fact for the jury. Whether plaintiff exercised reasonable care is a fact question." *Wohlgelernter v Moffatt*, 16 Mich App 319, 320; 167 NW2d 866 (1969). It is true that plaintiff chose to jog along the side of a highway. However, according to plaintiff, he was only in the grass, well beyond any lanes of travel. Plaintiff also testified that, as he was jogging towards the ladder, other vehicles were slowing down and moving around the ladder, causing traffic to back up. Although plaintiff might be faulted for placing himself in danger, the fact that traffic was slowing down and backing up around the ladder would have made it appear unlikely to plaintiff, or someone else in his position, that any danger was imminent. Further, that only Hersey was unable to avoid swerving off the road and into plaintiff without braking leads to a rational conclusion that Hersey's failure to pay attention to the roadway was the primary cause of the accident. While a rational juror might attribute some fault to plaintiff for placing himself in a potentially dangerous position, we

---

[3] Our Supreme Court decided *Huggins* through an order, not an opinion. However, "[a]n order of [the Supreme] Court is binding precedent if it constitutes a final disposition of an application and contains a concise statement of the applicable facts and reasons for the decision." *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012). Because our Supreme Court's order in *Huggins* meets those requirements, this Court is bound by its holding.

cannot agree with Hersey that a rational juror could only conclude that plaintiff was more than 50 percent at fault for the accident.[4]

Hersey also argues that plaintiff's conduct violated MCL 257.679a, which prohibits pedestrians from being on a limited access highway. Assuming that plaintiff was in violation of MCL 257.679a, this fact would not automatically entitle Hersey to summary disposition. "Violation of a statute by a plaintiff or a defendant creates a prima facie case from which a jury may draw an inference of negligence." *Rodriguez*, 191 Mich App at 487-488. However, "It is for the jury to determine whether a violation of a statute was a proximate cause of the accident." *Id*. at 488. That Hersey may be able to establish a prima facie case of negligence does not establish that plaintiff was, as a matter of law, more than 50 percent at fault for the accident. Rather, it is merely evidence that plaintiff may have been negligent to some degree. See *id*. at 487-488. The question of comparative fault remains a jury question, unless a rational juror could only conclude that plaintiff was more than 50 percent at fault. *Id*. See also *Huggins*, 469 Mich at 898-899.

Hersey relies on *Huggins* to support his argument, which is easily distinguishable. In *Huggins*, "The evidence presented show[ed] that plaintiff was crouching or kneeling in the middle of an unlit rural road in the middle of the night, just beyond the crest of a hill, wearing dark colored clothing at the time he was struck by [the] defendant's automobile." *Huggins*, 469 Mich at 898. "Tests performed by a police accident reconstruction expert revealed that no driver would have enough time to avoid the collision, given the decedent's location just beyond the crest of the hill." *Id*. at 898-899. In contrast, the only act of negligence alleged by the plaintiff was that the defendant had taken his eyes off the road to look at his watch. *Id*. at 898. Our Supreme Court held that "no reasonable juror could find that [the] defendant was more at fault than the decedent in the accident." *Id*. In this case, however, there is ample evidence that a driver could avoid striking plaintiff as Hersey did, given that numerous drivers were able to avoid the ladder without swerving into plaintiff's path before the accident. Therefore, the trial court correctly concluded that a question of fact existed regarding the issue of comparative fault, and thus, did not err by denying Hersey's motion for summary disposition.[5]

---

[4] Both parties place much emphasis on plaintiff's motive for retrieving the ladder. This motive is irrelevant. The question is not why plaintiff was where he was, but to what extent plaintiff's presence, assuming his presence on the highway was a negligent act, contributed to his injuries. MCL 500.3135(2)(b).

[5] Hersey also cites a number of unpublished opinions of this Court in his brief on appeal. As all of these cases are unpublished, they are of no precedential value to this Court, and we decline to consider them. MCR 7.215(C)(1).

## IV. DOCKET NO. 318689

## A. EMPLOYEE OR INDEPENDENT CONTRACTOR

EPP first argues that the trial court erred when it found a question of fact existed regarding whether Hersey was an employee or independent contractor of EPP. As explained below, although the trial court used the incorrect framework to analyze this issue, it reached the correct result by denying summary disposition to EPP. Accordingly, we affirm the trial court's order. *Integral Ins Co*, 206 Mich App at 332-333.

" '[A] master is responsible for the wrongful acts of his servant committed while performing some duty within the scope of his employment.' " *Rogers v JB Hunt Transp, Inc*, 466 Mich 645, 651; 649 NW2d 23 (2002), quoting *Murphy v Kuhartz*, 244 Mich 54, 56; 221 NW 143 (1928). Thus, "Under the doctrine of respondeat superior, the negligence of an employee, arising out of acts done within the scope of his employment is imputed to his employer." *Hekman Biscuit Co v Commercial Credit Co*, 291 Mich 156, 160; 289 NW 113 (1939). Similarly, a principal may be liable for the acts of his or her agent "because the law creates a practical identity" between a principal and his or her agent. *Potter v McLeary*, 484 Mich 397, 424; 774 NW2d 1 (2009) (quotation marks and citation omitted). However, in Michigan, "the general rule [is] that an employer of an independent contractor is not liable for the contractor's negligence." *Anderson v Wiegand*, 223 Mich App 549, 556; 567 NW2d 452 (1997). "An independent contractor is defined as one who, carrying on an independent business, contracts to do work without being subject to the right of control by the employer as to the method of work but only as to the result to be accomplished." *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67, 73; 600 NW2d 348 (1999) (quotation marks and citations omitted). "[T]he 'test of the relationship [employee or independent contractor] is the right to control, whether in fact exercised or not.' " *Jenkins v Raleigh Trucking Servs, Inc*, 187 Mich App 424, 429; 468 NW2d 64 (1991), quoting *Brinker v Koenig Coal & Supply Co*, 312 Mich 534, 540; 20 NW2d 301 (1945).

In this case, the trial court erred by applying the economic reality test, as opposed to the control test, to determine whether EPP could be vicariously liable for Hersey's conduct. "[T]he purpose of the control test is to define and delimit the circumstances under which a master should be held liable for the acts committed by a servant which injure a third party." *Nichol v Billot*, 406 Mich 284, 296; 279 NW2d 761 (1979). "The control test is also used to determine when an independent contractor has become an employee for purposes of *respondeat superior* liability on the part of his employer who has exercised a degree of control inconsistent with independent contractor status." *Id*. However, Michigan has "abandoned the control test as the exclusive criterion by which the existence of an employee-employer relationship, *for the purposes of remedial social legislation*, is determined." *Goodchild v Erickson*, 375 Mich 289, 293; 134 NW2d 191 (1965) (emphasis added). Where one's status as an employee is relevant for purposes of such legislation, the economic reality test is applied. *Id*. See also *Nichol*, 406 Mich at 295 ("The ultimate purpose of the economic reality test is to effectuate the goals of the social legislation by determining whether or not the relationship is of the type intended to be protected by the act."). Here, the question is whether EPP is vicariously liable in tort, and thus, the control

test is the proper test to apply. *Nichol*, 406 Mich at 296; *Ashker ex rel Estate of Ashker v Ford Motor Co*, 245 Mich App 9, 13-16; 627 NW2d 1 (2001).

This Court described the control test in *Hoffman v JDM Assocs, Inc*, 213 Mich App 466, 468-469; 540 NW2d 689 (1995), quoting *Janik v Ford Motor Co*, 180 Mich 557, 562; 147 NW 510 (1914):

> "The test is whether in the particular service which he is engaged or requested to perform he continues liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired, or who requests his services. It is not so much the actual exercise of control which is regarded, as the right to exercise such control. To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under control of a third person. Subject to these rules the original master is not liable for injuries resulting from acts of the servant while under the control of a third person."

In circumstances where the facts regarding the scope of a master's control create genuine issues of material fact, summary disposition is generally inappropriate. *Id*. at 469-470. However, where the facts are undisputed, the issue is a matter of law, which may be summarily determined. *Id*. at 470.

EPP primarily argues that it did not control the specific method of Hersey's work, in that Hersey ultimately controlled his conduct at client meetings. We disagree. Independent contractors are those who carry on an independent business, and are contracted by another to achieve a specific result without being subject to control regarding the method of how that result will be accomplished. *Candelaria*, 236 Mich App at 73. Hersey had no independent business. He was hired by EPP to sell EPP's products. EPP procured all of Hersey's clients and scheduled his appointments. EPP controlled not just the end result, i.e. selling EPP's products, but the method of achieving that result by training Hersey, providing him with presentation materials and business cards, and requiring him to abide by its ethics pledge. EPP's owner, Dawn-Marie Joseph, acknowledged that she would counsel Hersey if his conduct did not meet clients' expectations, thus evidencing her right to control Hersey. While Hersey had some degree of independence in how he conducted himself at meetings with clients, he was required to abide by a number of EPP's guidelines and policies when meeting with clients. Thus, when viewed in a light most favorable to plaintiff, the evidence shows that EPP controlled not only the end result, but the method of obtaining that result.

Further, although both Hersey and EPP considered Hersey to be an independent contractor, this fact is of little consequence. "If the employer of a person or business ostensibly labeled an 'independent contractor' retains control over the method of the work, there is in fact no contractee-contractor relationship, and the employer may be vicariously liable under the principles of master and servant." *Candelaria*, 236 Mich App at 73. Similarly, how EPP paid Hersey and reported his income for tax purposes, how integral Hersey's work was to EPP's

business, whether Hersey was eligible for health insurance or other benefits, and EPP's right to fire or discipline Hersey are irrelevant, except to the extent these facts bear on EPP's right to control Hersey's work.[6] At a minimum, the evidence created a question of fact regarding whether EPP had sufficient control over Hersey to render EPP liable for his conduct. Thus, summary disposition in EPP's favor would have been inappropriate.

## B. SCOPE OF EMPLOYMENT

EPP next argues that the trial court erred when it found that a question of fact existed regarding whether the accident occurred within the scope of Hersey's employment. We disagree.

As an initial matter, we note that, contrary to plaintiff's argument, EPP did not waive this defense. First, EPP's claim that Hersey was acting outside the scope of his employment is not an affirmative defense because the claim disputes the very core of EPP's liability, and an affirmative defense presumes liability. *Citizens Ins Co of America v Juno Lighting, Inc*, 247 Mich App 236, 241; 635 NW2d 379 (2001). Accordingly, MCR 2.111(F)(3) did not require EPP to state the defense under a separate heading, and to state the specific facts constituting the defense. Second, EPP's answer denied that Hersey was acting within the scope of his employment at the time of the accident, and thus, EPP did not waive the defense according to MCR 2.111(F)(2).

While an employer may be vicariously liable for the acts of employees, "An employer is not vicariously liable for acts committed by its employees outside the scope of employment, because the employee is not acting for the employer or under the employer's control." *Rogers*, 466 Mich at 651. In the context of travel to and from work, Michigan recognizes a "dual-purpose" rule, under which an employer is liable for torts of its employee "committed while going to or coming from work if the employee's trip involved a service of benefit to the employer." *Kester v Mattis, Inc*, 44 Mich App 22, 24; 204 NW2d 741 (1972). "If the work of the employer creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work is merely incidental to the travel, and the trip would not have been made but for the private purpose of the servant, he is out of the scope of his employment in making it." *Ten Brink v Mokma*, 13 Mich App 85, 87; 163 NW2d 687 (1968) (quotation marks and citation omitted). Thus, as examples, an employer may be liable for acts occurring while the employee is driving his or her own vehicle on a business trip, *Long v McKay*, 295 Mich 494, 498; 295 NW 239 (1940), to a required meeting, *Ten Brink*, 13 Mich App at 87, or to deliver receipts to the employer at the end of the day, *Kester*, 44 Mich App at 24. "While the issue of whether the employee was acting within the scope of his employment is generally for the trier of fact, the issue may be decided as a matter of law where it

---

[6] These facts would be relevant under the economic reality test. See *Citizens Ins Co of America v Auto Club Ins Ass'n*, 179 Mich App 461, 465; 446 NW2d 482 (1989) (stating that the factors of the economic reality test are "(1) control of the worker's duties; (2) payment of wages; (3) right to hire, fire and discipline; and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal").

is clear that the employee was acting to accomplish some purpose of his own." *Bryant v Brannen (On Remand)*, 180 Mich App 87, 98; 446 NW2d 847 (1989).

In this case, Hersey's work for EPP required him to travel to clients throughout the state. EPP required him to have a driver's license as a condition of his employment. Indeed, the vast majority of Hersey's job entailed traveling to clients; he traveled to EPP's office only once each week for meetings. In short, Hersey was a traveling salesman, required by EPP to drive to the homes of his clients. At the time of the accident, it is undisputed that Hersey was traveling home after completing a sales call scheduled by EPP. Because an employer may be liable for the torts of its employees "committed while going to or coming from work if the employee's trip involved a service of benefit to the employer," *Kester*, 44 Mich App at 24, the trial court correctly found that a question of fact existed regarding whether Hersey was acting within the scope of his employment at the time of the accident.[7]

Affirmed.

/s/ E. Thomas Fitzgerald
/s/ Kurtis T. Wilder
/s/ Donald S. Owens

---

[7] We note that EPP's reliance on worker's compensation law to support its argument is misplaced, because plaintiff is not seeking worker's compensation. Rather, plaintiff is seeking to impose vicarious liability upon EPP for Hersey's negligence under a theory of respondeat superior.