# STATE OF MICHIGAN

# COURT OF APPEALS

ROGER C. VAN LIEU,

Plaintiff-Appellee,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

Defendant/Third-Party Plaintiff-
Appellee,

v

AMCO INSURANCE COMPANY,

Third-Party Defendant-Appellant.

UNPUBLISHED
February 28, 2017

No. 330014
Branch Circuit Court
LC No. 14-080428-NF

Before: BORRELLO, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Third-party defendant AMCO Insurance Company (AMCO) appeals as of right an October 13, 2015, trial court order granting summary disposition in favor of third-party plaintiff, Farm Bureau General Insurance Company of Michigan (Farm Bureau). For the reasons set forth in this opinion, we affirm.

## I. FACTS

This case arises out of an automobile accident that occurred on August 12, 2013. The underlying facts do not appear to be in dispute. At the time of the accident, plaintiff, Roger Van Lieu, was driving a semi-truck owned by Douglas Carpenter d/b/a Crooked Creek Farms (hereinafter "Crooked Creek"). The semi-truck was insured by AMCO. However, plaintiff filed an action against his personal automotive insurer, Farm Bureau, seeking no-fault benefits. Farm Bureau then filed a third-party complaint against AMCO, alleging that AMCO was responsible for payment of plaintiff's no-fault benefits because, according to Farm Bureau, plaintiff was an employee of Crooked Creek at the time of the accident.

At plaintiff's deposition, he testified that he received his commercial driver's license (CDL) in the late 1990s. Plaintiff owned a dairy farm, but he sold most of the cows in 2001 due

-1-

to decreasing profits. He then worked as a truck driver for Worden & Worden, Inc. in Coldwater, Michigan, for nine years. In 2009 or 2010, plaintiff started selling milk again. Starting in August 2013, plaintiff's daughter, Christine took over ownership and daily operations of the dairy farm.

Plaintiff started working for Carpenter at Crooked Creek in May 2012. Crooked Creek was a multi-faceted business involved in trucking, crop farming, and swine production. Plaintiff contacted Carpenter, a neighbor, seeking a job because plaintiff wanted to work closer to his residence and his wages at Worden & Worden had substantially decreased. Carpenter hired plaintiff as a truck driver because Carpenter had recently fired one of his truck drivers.

Plaintiff would transport hogs from Crooked Creek's hog barns to the slaughter plant in Delphi, Indiana. He also transported grain or corn from Crooked Creek to mills in Indiana. Plaintiff received direction from Carpenter regarding when and where deliveries were to occur, although these directions were typically not written. Plaintiff was paid $750 a week by check, regardless of how many hours he worked or how many deliveries he completed. The check came from Crooked Creek and was signed by Carpenter. Plaintiff typically worked for Crooked Creek between 40 and 50 hours a week.

Plaintiff testified that he did not complete an application for employment with Crooked Creek and that he believed that there may have been some type of a written agreement that Carpenter submitted to his insurance company, but plaintiff was unsure. Although Carpenter had to show plaintiff how to operate the lights and other features on the semi-truck, he did not have to train plaintiff on how to drive or park the truck. Carpenter also showed plaintiff how to operate the trailer for hauling hogs and liquid manure. If plaintiff was unable to complete a delivery, Carpenter would complete the delivery. Plaintiff used Crooked Creek's credit card to purchase gas for the semi-truck while transporting hogs or grain. The semi-truck was equipped with an I-pass in the window so road tolls were charged to Crooked Creek.

Plaintiff usually drove the same semi-truck, but this was the result of an informal agreement. All of Crooked Creek's trucks were parked on rented property located across the street from the farm. Plaintiff normally drove his own vehicle from his residence to the farm. Carpenter notified Crooked Creek's insurance carrier that plaintiff would be driving one of Crooked Creek's trucks.

Plaintiff transported hogs two or three times a week. On days that plaintiff was not transporting hogs, he worked at Crooked Creek's farm from 8:30 a.m. until 5:00 p.m. Carpenter testified that plaintiff would sometimes work longer days or leave work early to milk his own cows. Plaintiff would transport hog manure, repair broken equipment, plant, harvest, and plow. Carpenter would provide plaintiff with a list of tasks to complete. If there was no work, Carpenter would send plaintiff home. Plaintiff would sometimes provide his own specialty tools for mechanical repair work. However, the other parts required for repairs were provided by Crooked Creek. Crooked Creek also employed one or two manual laborers on the farm.

Carpenter generally did not supervise plaintiff while he was spreading manure in the fields or repairing equipment on the farm. Plaintiff could stop on his way back from a delivery without asking Carpenter for permission. Plaintiff's pay was not docked if he was unable to

work, and he was not reprimanded for being late. Plaintiff could choose his own schedule on days that he was not delivering hogs or grain. However, plaintiff would inform Carpenter when he was coming into work. Carpenter testified that he did have control over the duties performed by plaintiff, but plaintiff could complete the tasks on his own schedule. Plaintiff would submit the bill of lading from every delivery to Crooked Creek's office for invoicing.

Plaintiff did not work at any other jobs while he was employed by Crooked Creek. He also did not own his own trucking company. Crooked Creek did not provide plaintiff with 401(k) benefits, medical benefits, or life insurance benefits. Taxes were not deducted from his check. Plaintiff reported his income using a 1099 form and paid his own self-employment taxes. Plaintiff received two weeks of paid vacation after working at Crooked Creek for one year. Carpenter testified at his deposition that there was no written agreement concerning plaintiff's employment and that plaintiff's employment had no specific end date. Carpenter also testified that he regarded plaintiff as an independent contractor and that it was standard in the farming community for truck drivers to be independent contractors.

On August 12, 2013, plaintiff was transporting liquid hog manure to one of Crooked Creek's fields, but he "drove into strong winds and it blew the truck sideways." The semi-truck rolled into the ditch. As a result, plaintiff suffered a cervical facet fracture, a lumber transverse process fracture in his lower back, a head laceration, an ear laceration, and a chipped bone in his right elbow. Plaintiff was restricted from heavy lifting and strenuous activity by his doctor. He did not apply for workers' compensation.

Plaintiff filed an action against his personal automotive insurer, Farm Bureau, seeking no-fault benefits. Farm Bureau then filed a third-party complaint against AMCO, alleging that AMCO was responsible for payment of plaintiff's no-fault benefits because plaintiff was an employee of Crooked Creek. However, AMCO asserted that Farm Bureau was responsible for payment of plaintiff's no-fault benefits because plaintiff was an independent contractor.[1]

Farm Bureau moved for summary disposition under MCR 2.116(C)(10), alleging that there was no genuine issue of material fact regarding whether plaintiff was an employee of Crooked Creek. AMCO opposed the motion, arguing that plaintiff was an independent contractor. After reviewing the parties' briefs and hearing oral argument, the trial court "adopted the law, logic and rationale of" Farm Bureau and granted its motion for summary disposition under MCR 2.116(C)(10). The trial court entered a written order dismissing the action on October 13, 2015. AMCO now appeals by right.

## II. ANALYSIS

We review a trial court's ruling on a motion for summary disposition de novo. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001). When reviewing a motion brought pursuant to MCR 2.116(C)(10), this Court's "task is to review the record evidence, and all reasonable inferences drawn from it, and decide whether a genuine issue

---

[1] Plaintiff settled his claims against Farm Bureau and AMCO.

regarding any material fact exists to warrant a trial." *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). A genuine issue of material fact exists when the record, "giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ." *Shallal v Catholic Social Services of Wayne County*, 455 Mich 604, 609; 566 NW2d 571 (1997).

"An employee . . . who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits . . . from the insurer of the furnished vehicle." MCL 500.3114(3). However, "[a]n independent contractor is not considered an 'employee' for purposes of the no fault act." *Adanalic v Harco Nat Ins Co*, 309 Mich App 173, 191; 870 NW2d 731 (2015).

"For purposes of MCL 500.3114(3), whether an injured party was an employee is determined by applying the economic reality test." *Id*. at 190-191 (quotation marks omitted). The economic reality test requires the court to consider the following factors: "(a) control of the worker's duties, (b) payment of wages, (c) right to hire, fire and discipline, and (d) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Id*. at 191 (quotation marks and citation omitted). Other factors a court may consider include: (1) whether the individual furnishes his own equipment and materials; (2) whether the individual holds himself out to the public for hire; and (3) whether the work in question is customarily performed by an independent contractor. *Coblentz v City of Novi*, 475 Mich 558, 579; 719 NW2d 73 (2006); *McKissic v Bodine*, 42 Mich App 203, 208-209; 201 NW2d 333 (1972).

In applying the economic realty test, "[w]eight should be given to those factors that most favorably effectuate the objectives of" MCL 500.3114(3). *Mantei v Mich Pub Sch Employees Retirement Sys*, 256 Mich App 64, 79; 663 NW2d 486 (2003). "The cases interpreting [MCL 500.3114(3)] have given it a broad reading designed to allocate the cost of injuries resulting from use of business vehicles to the business involved through the premiums it pays for insurance." *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84, 89; 549 NW2d 834 (1996).[2]

In this case, there was substantial evidence in the record that established that plaintiff was an employee of Crooked Creek such that reasonable minds could not differ on the issue. As an initial matter, the fact that Carpenter considered plaintiff an independent contractor is not dispositive of plaintiff's status, but one factor for consideration under the economic reality test. See *Kidder v Miller-Davis Co*, 455 Mich 25, 45-46; 564 NW2d 872 (1997) (refusing to hold that the contract that "disavow[ed] any employer-employee relationship between the two parties . . . alone [was] dispositive of the status of the parties").

The deposition testimony established that the first, third, and fourth factors in the economic reality test and the first and second additional factors identified above all weighed in

---

[2] Our Court's definitions seemingly dovetail with recent enactments by the Department of Labor's Fair Labor Standards Act which seek to refine the differences between an employee and an independent contractor. See: https://webapps.dol.gov/elaws/whd/flsa/docs/contractors.asp.

favor of a finding that plaintiff was an employee of Crooked Creek. Crooked Creek determined plaintiff's delivery schedule, and on days plaintiff was not making deliveries, Carpenter gave plaintiff a list of tasks to complete at the farm. Plaintiff drove a semi-truck owned by Crooked Creek, and Crooked Creek paid for the truck's fuel, maintenance, and highway tolls. Plaintiff was paid a weekly wage of $750 regardless of how many hours he worked. He also received two weeks of paid vacation after working at Crooked Creek for one year. There was testimony to support that Carpenter was able to fire plaintiff without consequence. Plaintiff did a variety of tasks for the farm, including transporting hogs and grain, equipment maintenance, manure spreading, planting, and harvesting, which were all integral to Crooked Creek's farming business. Plaintiff generally used Crooked Creek's equipment, and he did not hold himself out for public hire. Plaintiff worked exclusively for Crooked Creek between 40 and 50 hours a week. While evidence showed that plaintiff's pay-structure was more akin to an independent contractor—i.e. plaintiff received a 1099 form and Crooked Creek did not withhold income or payroll taxes—considering all of the other evidence, this alone did not leave open an issue on which reasonable minds could differ. *Shallal*, 455 Mich at 609. In short, applying the economic reality test indicates that there was no genuine issue of fact regarding whether plaintiff was an employee of Crooked Creek and the trial court did not err in granting summary disposition in favor of Farm Bureau. *Id*.

Affirmed. Appellee having prevailed, may tax costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Kelly