*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NORFOLK SOUTHERN RAILWAY COMPANY,

       Plaintiff-Appellant

v

METRO FIBERNET LLC,

       Defendant-Appellee.

UNPUBLISHED
February 2, 2023

No. 359420
Ingham Circuit Court
LC No. 21-000332-CB

Before: GLEICHER, C.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

The issue presented is whether a utility company must comply with a railroad company's approval process before installing a utility line 15 feet under a railroad track at its intersection with a public roadway. Despite obvious safety concerns, no statute requires the utility company to secure permission or even provide notice. The railroad company could not force the utility company to comply with its work application process. We affirm the circuit court's summary dismissal of its lawsuit.

## I. BACKGROUND

Norfolk Southern Railway Company (NSRC) owns several miles of railroad track in Ingham County. Metro Fibernet, LLC (Metronet) is a telecommunications company. On November 22, 2019, Metronet notified NSRC's lessee—Jackson & Lansing Railroad Company— that it intended to bore under the railroad tracks at a crossing over St. Joseph Street and install fiber optic cable. The notice included "[d]etailed designs and construction plans for this crossing" and a copy of the insurance policy covering the project. Metronet got a permit from the city of Lansing to install the cables. The permit required Metronet "to secure any and all other authorizations from impacted utilities," contact MISS DIG, and secure "any other applicable permits from other governing agencies," such as the county and the Michigan Department of Transportation (MDOT).

In return, NSRC informed Metronet that the written notice permitted under MCL 462.265 only applies to wires strung over and across the railroad right-of-way, not below. NSRC advised Metronet to follow the railroad's established procedure for approval of such underground projects. Metronet continued with its plans, insisting that it was required only to provide 30 days written

notice. It also provided similar notice of intent to install underground cables under other railroad track/highway crossings in the county.

NSRC filed a petition with MDOT to "settle [this] dispute." NSRC argued that MCL 462.265 does not apply and therefore Metronet was required to seek permission to install the underground cable. Despite stating its belief that the statute does not apply, NSRC "invoke[d] MDOT's explicit jurisdiction under MCL 462.265(3) to resolve this dispute." NSRC filed additional petitions when Metronet provided written notices of intent to bore under other railroad crossings.

MCL 462.265 is part of the railroad code of 1993 and provides:

(1) A corporation or person shall not *string any wire, electrical or other, over and across* a railroad or street railway right-of-way unless 1 of the following procedures is followed:

(a) *For crossings within the right-of-way of a public street, highway, road, or alley, notification shall first be given to the railroad company and railroad authority of the place and the manner in which the corporation or person desires to string any wire 30 calendar days prior to performance of the work* unless the parties otherwise agree.

(b) For crossings at any other location not within the right-of-way of a public street, highway, road, or alley, notification shall first be given to the railroad company and railroad authority in writing of the place and the manner in which the corporation or person desires to string the wire and written or telegraphic permission shall be received from the railroad company and railroad authority prior to performance of the work. The railroad company shall respond positively or negatively to the request within 90 calendar days after the receipt of the request.

(2) Any aerial crossings shall be constructed in accordance with specifications of the Michigan public service commission and all applicable codes and laws.

(3) In case of a dispute emanating from subsections (1) and (2) which the parties cannot resolve within a reasonable time, *either party may petition the department for a hearing. The department shall have jurisdiction to settle the dispute between the parties.*

(4) Upon proof of violation of or failure to comply with subsections (1) and (2), a court of competent jurisdiction may issue an order immediately enjoining the violation. [Emphasis added.]

MDOT referred the petitions to the Michigan Office of Administrative Hearings and Rules. An administrative law judge (ALJ) was assigned to consider the petitions. Metronet moved for summary disposition, arguing that MDOT and the ALJ lacked subject matter jurisdiction to hear the case under MCL 462.265. NSRC filed a brief opposing the summary disposition motion, but it is not part of the current record.

The ALJ determined that MDOT lacked jurisdiction to resolve a dispute regarding underground wires as they are not mentioned in the statute. But the ALJ went on to state that he

> agrees with NSRC's assertion that MCL 462.265 does not allow Metro[n]et to unilaterally proceed with installing underground wires under the crossings in this case. Similarly, the [ALJ] agrees with NSRC's concerns raised over safety and costs. However, in order to resolve this particular dispute, MDOT, and, this tribunal by extension, would need to exercise equitable power that [has] not been provided. Unless expressly authorized by a statute, an administrative agency does not have equitable jurisdiction. . . .
>
> NSRC fails to cite authority that specifically vests MDOT with the requisite power to resolve a dispute involving a railway company and a utility company concerning the installation of underground fiber optic cables. In this regard, NSRC, on page 7 of its Brief in Opposition, correctly points out that, "The statute does not purport to discuss underground wiring at all." The [ALJ] also cannot find support to show how this tribunal has the requisite authority to determine whether MCL 462.265 applies to underground crossings. Unlike the circuit court, this tribunal cannot issue a declaratory judgment, a preliminary injunction or grant other equitable relief. For these reasons, this tribunal lacks jurisdiction and this matter should be dismissed.

The MDOT Chief Administrative Officer adopted the ALJ's decision after reviewing the parties' exceptions and summarily dismissed the petition for lack of subject matter jurisdiction.

NSRC then filed this case in the Ingham Circuit Court. NSRC recounted that "[o]n numerous occasions," Metronet had asserted its right under MCL 462.265 to install fiber optic cable under the railroad's right-of-way where it crosses the public highway without the railroad's approval, "based on mere written notice." NSRC asserted that it had advised Metronet that "pursuant to its clear terms," MCL 462.265 applies to wires "strung over railroad rights-of-way," not under. Although the statutory notice provision did not apply, NSRC asserted that Metronet was required "to comply with NSRC's established procedures for underground utility crossings."

NSRC sought a declaratory judgment that Metronet did "not have legal authority pursuant to MCL 462.265 to install underground cable . . . underneath NSRC's right-of-way without the permission of NSRC." NSRC sought a permanent injunction against the installation of any further cable underneath NSRC rights-of-way without permission, as well as any relief the court deemed just.

In lieu of an answer, Metronet filed a motion for summary disposition pursuant to MCR 2.116(C)(8). Metronet contended that NSRC had no authority to preclude a utility from installing underground cable under a public highway. Metronet accused NSRC and other railroad owners of illegally "attempt[ing] to collect exorbitant fees from anyone attempting to string cable, lay conduit, etc. along a public right-of-way if, in the process, it crosses a set of railroad tracks." NSRC improperly forces the crossing party to obtain the railroad's approval through a lengthy permit process that costs "tens of thousands of dollars," Metronet asserted. Yet, NSRC had not cited any legal authority permitting it to require participation in this expensive process.

Turning to an analysis of MCL 462.265, Metronet argued that the statute "makes clear that crossings with wire only require the railroad's permission if the crossing is 'not within the right-of-way of a public street, highway, road, or alley.'" As Metronet sought to cross the tracks in a public street, it was required only to notify NSRC 30 days in advance under MCL 462.265(1)(a). Citing a different statute, MCL 247.183, Metronet contended that it was the municipality's duty to grant permission, not the railroad's. A railroad's permission is required only when the utility company seeks to cross the rail line on private property under MCL 462.265(1)(b). Metronet emphasized that NSRC took contrary positions in relation to the statute. NSRC stated in the complaint that MCL 462.265 only applies to wires strung "over and across" the track. After deeming the statute inapplicable, NSRC then relied on the statute to claim that Metronet required permission to bore under the tracks.

Ultimately, Metronet relied on MCL 247.183(1) of the Highway Code, which provides:

Except as otherwise provided under subsection (2), telegraph, telephone, power, and other public utility companies, cable television companies, broadband companies, and municipalities may enter upon, construct, and maintain telegraph, telephone, or power lines, pipelines, wires, cables, poles, conduits, sewers or similar structures upon, over, across, or under any public road, bridge, street, or public place, including, longitudinally within limited access highway rights-of-way, and across or under any of the waters in this state, with all necessary erections and fixtures for that purpose. A telegraph, telephone, power, and other public utility company, cable television company, broadband company, and municipality, before any of this work is commenced, shall first obtain the consent of the governing body of the city, village, or township through or along which these lines and poles are to be constructed and maintained.

Under this statute, Metronet required only the municipality's permission to install its fiber optic cables under the roadway, even where the roadway intersected with a railroad track. Metronet further cited MCL 484.3105, which requires telecommunication companies to seek permission only from the municipality when installing cables along a public right-of-way.

NSRC retorted that Metronet had "pepper[ed] its motion for requests for sanctions and other claims while completely ignoring or glossing over the issues that have already been decided by" MDOT. It complained that Metronet had "continued to assert 'rights' under MCL 462.265, rights that [MDOT] in previous litigation ha[d] stated do not exist." NSRC asserted that railroads bear a statutory duty to maintain the roadway as well as their tracks where the tracks cross a public road. Citing MCL 462.307, NSRC emphasized that even municipalities require railroad permission before modifying the roadway at a rail crossing. NSRC also relied upon MCL 462.309, which provides in relevant part:

(1) A railroad owning tracks across a public street or highway at grade shall at its sole cost and expense construct and thereafter maintain, renew, and repair all railroad roadbed, track, and railroad culverts within the confines of the street or highway, and the streets or sidewalks lying between the rails and for a distance outside the rails of 1 foot beyond the end of the ties. The road authority at its sole

cost and expense shall construct or improve if necessary and thereafter maintain, renew, and repair the remainder of the street or highway.

*   *   *

(3) The full cost of maintaining and repairing all existing crossings shall be borne by the respective parties responsible for the work as provided in this act. The cost of improving an existing crossing, where improvement is necessary, shall be borne in the same manner as provided in this act for maintenance and repair.

"In the end, the roadbed that Metronet wishes to drill holes into to install its cable is NSRC property and Metronet cannot trespass on [that property] without the authority to do so and no such authority exists."

NSRC admitted that MCL 462.265 does not apply as the statute refers only to wires "over and across" the railway line. While the word "across" is "less restrictive" than "over," the statute uses the conjunctive "and," indicating that both terms must be met. Underground wires do not meet that definition.

NSRC also filed a motion for a preliminary injunction. NSRC asserted that Metronet had installed underground fiber optic cable on NSRC property without permission and planned to repeat these actions at other crossings. NSRC sought to enjoin those installations pending resolution of its lawsuit.

The court conducted a hearing to consider the parties' motion and ruled in Metronet's favor. The court began by noting that its review was de novo; "[i]t is not a review as an appeal from the MDOT ruling." Before the court was a purely legal issue. And the court found NSRC's request to be "somewhat . . . puzzling": NSRC claimed that MCL 462.625 does not give Metronet the legal authority to install underground cables without the railroad's authority, but also claimed that MCL 462.265 does not apply to underground cable. If the statute does not apply to underground cable installation, "the next step would be to determine by what authority can [NSRC] require [Metronet] to get [NSRC's] permission to install the underground cable."

The court determined that MCL 462.265 applies "only to wires strung both over and across." It "does not apply to wires or cables buried beneath the surface." As the statute does not apply, Metronet could not be required to seek permission under that statute. NSRC also cited MCL 462.309, which provides that a railroad that owns tracks crossing a public street bears the sole cost of maintaining "all railroad, roadbed, track, and railroad culverts" spanning one foot beyond the ties on each side. The court defined the roadbed as "the bed on which the tires, rails, and ballast of a railroad rest." Ballast in turn "is defined as gravel or broken stone laid in a railroad bed." The court noted that NSRC did not "even suggest[] that ballast could extend to 15 feet underground," the depth at which Metronet proposed to install the cable. The court described:

[NSRC] makes a huge leap in logic from saying it has a duty to maintain, renew, and repair the railroad roadbed to concluding that quote, "It is imperative that any proposed underground installations are subject to prior review and approval by the railroad."

-5-

I can't make that leap in logic, unless there's legal authority for it, and [NSRC] points to none. [MCL 462.309] doesn't give [NSRC] ownership or a duty to maintain anything deeper than the ballast, and certainly not 15 feet underground.

NSRC doesn't own or control all of the earth under the ballast all the way to the center of the earth. In fact, MCL 247.183 addressed the authority to bury cable where railroads are not the owners of land and where railroads have no duty to maintain anything.

MCL 247.183 permits broadband companies to install wires and cables under a public road if they secure the consent of the municipality alone, not any railroad company, the court concluded, ruling that Metronet had not trespassed on NSRC's property and was not required to seek NSRC's consent for the proposed work. The court dismissed the action, and NSRC appeals.

## II. STANDARDS OF REVIEW

We review de novo a lower court's resolution of a summary disposition motion. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "[M]otions under MCR 2.116(C)(8) test the legal sufficiency of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Encompass Healthcare PLLC v Citizens Ins Co*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 357225), slip op at 3 (cleaned up).

The crux of this case is the interpretation of various statutes.

The primary goal of statutory interpretation is to identify and give effect to the intent of the Legislature. We first look to the specific language of the statute in determining the intent of the Legislature. We accord to every word or phrase of a statute its plain and ordinary meaning, unless a term has a special, technical meaning or is defined in the statute. [*Id.*, slip op at 4 (cleaned up).]

Although NSRC complained that the parties were bound by the ALJ's ruling, that ruling was based on the ALJ's interpretation of MCL 462.265.

[A]gency interpretations are entitled to respectful consideration, but they are not binding on courts and cannot conflict with the plain meaning of the statute. While the agency's interpretation may be helpful in ascertaining the legislative intent, courts may not abdicate to administrative agencies the constitutional responsibility to construe statutes. Giving uncritical deference to an administrative agency would be such an improper abdication of duty. [*In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 117-118; 754 NW2d 259 (2008).]

Accordingly, if the ALJ improperly interpreted the plain language of the relevant statutes, we must conduct a de novo review and reach an independent conclusion.

## II. PROPERTY INTEREST

NSRC asserts that it owns the land under its railroad tracks in fee simple, including where those tracks cross public roadways. This ownership interest entitles it to prevent others from trespassing under the surface, NSRC contends. With its appellate reply brief, NSRC presented documents from its "real estate file" on this rail line. Although this was an expansion of the record, we will consider those documents as this is a legal rather than factual question and the circuit court summarily dismissed the action before discovery could be conducted, essentially precluding the presentation of these essential records.

NSRC's real estate file includes a 1966 quit-claim deed from the Michigan Central Railroad Company and New York Central Railroad Company to NSRC's predecessor-in-interest. This deed describes the subject land, but otherwise is vague. It does not describe the property interest in any detail; indeed, the terms "fee," "fee simple," "right-of-way," and "easement" are never mentioned. Schedule A to the deed indicates that the rail line already existed and required the grantee to erect and maintain "a suitable barricade along the track side of" the land. Overall, the omission of the nature of the property interest is concerning, as "[i]t is settled law in this State that a quitclaim deed transfers any interest the grantor may have in the lands, whatever its nature," no more and no less. *Roddy v Roddy*, 342 Mich 66, 69; 68 NW2d 762 (1955). See also *Doelle v Read*, 329 Mich 655, 657; 46 NW2d 422 (1951) (quotation marks and citation omitted) ("The grantee in a quitclaim deed acquires the right and title which his grantor had, and no other.").

However, the file includes letters connected with a 1946 legal action in which the railroad companies refer to their "right-of-way." A March 25, 1946 letter indicates that "attached papers show that title to this portion of the right-of-way was acquired in 1865, by condemnation proceedings." A handwritten, 1865 probate court judgment was attached as well. Although much of this document is illegible, the caption indicates that it pertains to "proceedings" regarding a "right of way." The judgment states, "the west side of the line established for the route of the said Rail Road over and across the undivided two fifths of the [indecipherable]," and reiterates that the interest pertains to "the west side of the line established for the route of the Said Rail Road over and across the" northwest section of a certain plot. We could not locate the terms "fee," "fee simple," "right-of-way," or "easement" within the body of this document. However, the 1946 legal correspondence and the heading of the 1865 judgment clearly used the term "right-of-way."

In *Quinn v Pere Marquette R Co*, 256 Mich 143, 150; 239 NW 376 (1931), the Michigan Supreme Court explained:

> "Right of way" has two meanings in railroad parlance: the strip of land upon which the track is laid, and the legal right to use such strip. In the latter sense it may mean an easement. But in this State and others the character of the title taken to the strip depends upon the language of the conveyance.

"Where the land itself is conveyed, although for railroad purposes only, without specific designation of a right of way, the conveyance is in fee and not of an easement." *Id*. at 150-151. On the other hand, "[w]here the grant is not of the land but is merely of the use or of the right of way, or, in some cases, of the land specifically for a right of way, it is held to convey an easement only." *Id*. at 150. In *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich

359, 370; 699 NW2d 272 (2005), the Supreme Court again held that "the precise contours of the property interest conferred upon" a railroad company must come from the deed creating the interest.

Given that the 1865 judgment and 1966 quit-claim deed describe the parameters of certain real estate and the 1865 judgment cites the property's use for a rail line, NSRC likely does hold the railroad right-of-way in fee. But does an unlimited fee ownership exist even where the rail line crosses a public roadway?

MCL 462.273(1) of the Railroad Code provides that "a person shall not walk, ride, drive, or be upon or along the right-of-way or yard of a railroad company operating its lines within this state, or go upon or cross the right-of-way or yard at a place *other than a public or private crossing*, unless having first obtained written permission from the owner or occupant railroad, its agent or servant." (Emphasis added.) For purposes of this statute, the "right-of-way" is defined as "the track or roadbed owned by a railroad and that property owned by a railroad which is located on either side of its tracks and which is readily recognizable to a reasonable person as being railroad property or is reasonably identified as such by fencing, the existence of railroad tracks, or appropriate signs." MCL 462.273(2). This provision of the Railroad Code makes clear that the section of the right-of-way that crosses a roadway is not entitled to the same protection of privacy as the remainder of the track.

Public highways can be created in several ways and we cannot discern from this record how the subject highway came to be. Even assuming, however, that NSRC, as an abutting landowner, retained fee simple interest to the land underlying this public road,[1] NSRC could not assert the unfettered control it proposes. The Michigan Supreme Court has held that even where the public only has an easement in the public highway, the government may approve the installation of underground utilities without the consent of or compensation to the fee holder. *Eyde Bros Development Co v Eaton Co Drain Comm*, 427 Mich 271, 285-286; 398 NW2d 297 (1986). This is commensurate with the many statutes cited by the parties regarding the installation of utilities underneath public highways. Absent a statute giving railroads increased rights at these intersections, we cannot find that NSRC's property rights were invaded.

### III. NOTICE PROVISION

By its plain language, MCL 462.265 does not apply in this situation. As noted, MCL 462.265 provides, in relevant part:

(1) A corporation or person shall not *string any wire, electrical or other, over and across* a railroad or street railway right-of-way unless 1 of the following procedures is followed:

---

[1] When a public highway is dedicated by user rather than by statute, the public roadway is a public easement not owned in fee by the municipality. See *Eyde Bros Development Co v Eaton Co Drain Comm*, 427 Mich 271, 282; 398 NW2d 297 (1986).

(a) For crossings within the right-of-way of a public street, highway, road, or alley, notification shall first be given to the railroad company and railroad authority of the place and the manner in which the corporation or person desires to string any wire 30 calendar days prior to performance of the work unless the parties otherwise agree.

(b) For crossings at any other location not within the right-of-way of a public street, highway, road, or alley, notification shall first be given to the railroad company and railroad authority in writing of the place and the manner in which the corporation or person desires to string the wire and written or telegraphic permission shall be received from the railroad company and railroad authority prior to performance of the work. The railroad company shall respond positively or negatively to the request within 90 calendar days after the receipt of the request.

(2) Any aerial crossings shall be constructed in accordance with specifications of the Michigan public service commission and all applicable codes and laws.

According to this statute, if a corporation wants to string wire over and across a railway at a public roadway crossing, it must provide 30 days' *notice* to the railway. If it wants to string wire over and across a railway at any other location, it must secure the railroad's *permission*. If MCL 462.265 applies in this matter, Metronet would be required to provide notice, which it did, but would not be required to secure permission as its proposed installations are all within public railways.

But MCL 462.265 does not apply in this case because Metronet does not intend to "string any wire . . . over and across a . . . street railway right-of-way." This undefined phrase must be given its "plain and ordinary meaning." *Mantei v Mich Pub Sch Employees Retirement Sys*, 256 Mich App 64, 72; 663 NW2d 486 (2003).

The phrase "over and across" is an adverbial modifier adding more information about the verb "string." To "string [a] wire . . . over and across" something is generally understood to inherently encompass a wire's aerial placement. Stringing wire means connecting the ends of a wire to a pole, such that the wire runs above ground level.

Employing dictionary definitions does not alter the outcome because, string as a verb is defined, in relevant part, as "to tie, hang, or fasten with string." *Merriam-Webster's Collegiate Dictionary* (11th ed). The adverb "over" is defined as "across a barrier or intervening space," "across," and "above." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Across" is defined as "in a position reaching from one side to the other" and "to or on the opposite side." *Merriam-Webster's Collegiate Dictionary* (11th ed). Further, the words "over" and "across" are joined with the conjunctive "and," meaning that both terms must apply. See *Mich Pub Serv Comm v Cheboygan*, 324 Mich 309, 341; 37 NW2d 116 (1949) (" 'And' is a conjunctive, used to denote a joinder, a union. 'Or' is the opposite, a disjunctive, used to indicate a disunion, a separation, an alternative."). Read together, these terms in MCL 462.265(1) refer to wire or cable hung *above* and across a rail line.

As underground wires and cables are not contemplated in MCL 462.265, that statute did not require Metronet to either provide notice or seek permission from NSRC before beginning its planned work. This is a potentially problematic omission. After all, rail companies that install track across a public street or highway bear the full cost of construction, repair, and maintenance of that crossing. MCL 462.307(6); MCL 462.309(1). Notice of the installation of wires or cables underneath a rail line is an easy and inexpensive way to protect the interests and investments of the railroad companies and protect public safety. But we are not permitted to read these terms into the statute. If NSRC and other railroad owners want a change in the law, they must lobby the Legislature.[2]

NSRC contends that MCL 462.309 gives it an ownership interest in the ground underneath its tracks, making Metronet's proposed drilling a trespass. MCL 462.309(1) provides:

> A railroad owning tracks across a public street or highway at grade shall at its sole cost and expense construct and thereafter maintain, renew, and repair all railroad roadbed, track, and railroad culverts within the confines of the street or highway, and the streets or sidewalks lying between the rails and for a distance outside the rails of 1 foot beyond the end of the ties. The road authority at its sole cost and expense shall construct or improve if necessary and thereafter maintain, renew, and repair the remainder of the street or highway.

NSRC's duty to "maintain, renew, and repair" extends to one foot beyond the rail ties. Metronet proposes to begin its boring process outside that boundary. NSRC's duty also extends to the "railroad roadbed, track, and railroad culverts."

NSRC asserts that the ground extending beneath the track is the "roadbed." "Roadbed" is not defined in the statutes. This is a "technical term[] of art" and must be defined as used in the industry. *West Bloomfield Charter Twp v Karchon*, 209 Mich App 43, 51; 530 NW2d 99 (1995). We first look to federal law governing railroads. 49 USC 213.31 provides safety standards for the "roadbed and areas immediately adjacent to roadbed." The federal statutes also do not define the "roadbed." However, a study of the United States Department of Transportation (USDOT) Federal Railroad Administration describes, "A major component of the railroad rack system is the track substructure (i.e., the ballast, subballast, subgrade, and foundation). DiPilato et al, *Railroad Track Substructure-Design and Performance Evaluation Practices*, June 1983, p 1, available at <https://railroads.dot.gov/elibrary/ballast-and-subgrade-requirements-study-railroad-track-substructure-design-and-performance> (accessed December 16, 2022). Ballast is stone spread under and around the rails to absorb and distribute the weight and vibration from train traffic. *Id*. at 3. Subballast is sand and gravel mixed with "crushed natural aggregates or slags" laid underneath the ballast. It serves the same purpose as the ballast. *Id*. at 5. Subgrade soils are "natural earth materials lying under the ballast and subballast" that support the track system, absorb stress from the upper layers, and provide stability during the changing seasons. *Id*. This study found that any increased benefit beyond a ballast thickness of 21 inches was "questionable." *Id*. 43. The recommended thickness of subballast is six to 12 inches. *Id*. at 56. The deepest total

---

[2] An example of a statutory scheme that requires the application process proposed by NSRC can be found in Minnesota. See Minn Stat 237.045 (2022).

ballast, subballast, and subgrade cited in the report was five feet and the author noted that such depth is not necessarily required. *Id.* at 70. See also *Missouri Pacific R Co v R Comm of Texas*, 948 F2d 179, 182 n 2 (CA 5, 1991), quoting Hay, *Railroad Engineering*, 393 (2d ed. 1982) ("The roadbed is the area of soil that supports the ballast, which is the 'permeable, granular materials such as sand, gravel, crushed rock or slag, chat, cinders, and so on placed around and under the ties to promote track stability.' "). The USDOT study never suggests that the subgrade of a rail line extends 15 feet underground, the depth at which Metronet proposes to install its underground cables. Given this scientific study by the federal department tasked with railroad safety and the absence of any evidence provided by NSRC regarding the technical meaning of "roadbed," we decline to define roadbed as extending 15 feet beneath the roadway surface. NSRC cannot claim ownership to that depth simply because its tracks cross it.

Neither party cites any other statute referring to a utility company's duty to provide notice or seek permission from a railroad company before installing underground cables. MCL 247.183(1) of the highway code governs utility companies installing structures "upon, over, across, or under any public road, bridge, street, or public place." A private railroad track is not included in this list. The metropolitan extension telecommunications rights-of-way oversight act (METRO) governs the installation of broadband cables in public rights-of-way, but again does not refer to any duty in relation to railroad crossings. See MCL 484.3101 *et seq.*

Ultimately, NSRC has not established its entitlement to force Metronet through its application process. The circuit court properly denied NSRC's motion for injunctive relief and dismissed its lawsuit.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica